## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| LYZIA A. BROWN,<br><br>            Plaintiff,<br><br>  vs.<br><br>ANDREW SAUL, Commissioner of<br>Social Security,<br><br>          Defendant. | Cause No. CV-21-10-GF-BMM<br><br><br>**ORDER** |

## INTRODUCTION

Plaintiff Lyzia Brown ("Brown") brought this action to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for disability benefits and disability insurance benefits under Title II and Title XVI of the Social Security Act. 42 U.S.C. §§ 401-433, 1381-1385.

## JURISDICTION

The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Brown resides in Valley County, Montana. 29 U.S.C. § 1391(e)(1); L.R. 1.2(c)(3).

## STANDARD OF REVIEW

The Court conducts a limited review in this matter. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence also has been described as "more than a mere scintilla," but "less than a preponderance." *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).

## BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but also cannot "engage in any other kind of substantial gainful work which exists in the national economy."

*Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382(a)(3)(A), (B)).

Social Security Administration regulations provide a five-step sequential evaluation process to determine disability. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The five steps are as follows:

1.  Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.  Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.  Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. § 416.920(e).

4.  Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. § 404.1520(f), 416.920(f).

5.  Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. § 416.920(g).

*Bustamante*, 262 F.3d at 954. The claimant bears the burden of proof at steps one through four. *See id.* The Commissioner bears the burden of proof at step five. *See id.*

## BACKGROUND

### I.     Plaintiff's Background

Brown is 25 years old. (Doc. 9 at 141). Brown has a high school education. (*Id.* at 139). Brown has past work experience loading boxes, cleaning walls, and working as a housekeeper. (*Id.* at 138-39).

Brown filed her application for Social Security disability and disability insurance benefits on August 28, 2018. (Doc. 13 at 4). Brown alleged that she suffers from the following variety of mental disorders: bipolar disorder, severe anxiety and depression, a substance abuse disorder stemming from smoking synthetic marijuana, attention deficit hyperactivity disorder, and a learning disability. (Doc. 9 at 33).

### II.    Procedural Background

An administrative law judge ("ALJ") conducted a hearing on Brown's application for disability and disability insurance benefits on August 11, 2020. (Doc. 9 at 44). The ALJ issued her decision on August 19, 2020 (Doc. 13 at 5). The ALJ denied Brown the benefits she requested on the grounds that she does not have a disability in the context of Social Security. (Doc. 9 at 38). The ALJ found

that Brown did not have a disability because Brown's impairments were not severe enough to meet the criteria of 20 CFR 404, Subpart P, Appendix 1, Part A and because Brown has the residual functional capacity to perform numerous jobs on the job market. (Doc. 9 at 28-38). Brown requested that the Administrative Appeals Council ("Appeals Council") review the ALJ's decision. (Doc. 2 at 3). The Appeals Council denied Brown's request for review on December 8, 2020. (*Id.*). The Appeals Council's denial of Brown's request to review made the ALJ's decision the final decision of the Commissioner. (*Id.*).

Brown filed the present appeal on January 28, 2021. (Doc. 2). The matter has been fully briefed. (Doc. 13). The Court is prepared to rule.

### III.    The ALJ's Determination

The ALJ followed the 5-step sequential evaluation process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 15, 2018. (Doc. 9 at 27).

At step two, the ALJ found that Plaintiff had the following severe impairments: substance induced psychosis from the use of synthetic cannabinoids, post-traumatic stress disorder, attention deficit hyperactive disorder, a learning disorder, anxiety, and bipolar disorder. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.* at 28).

At step four, the ALJ found that Plaintiff possessed the following residual functional capacity:

> To perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can understand, remember, and carryout simple tasks. She can maintain attention, concentration, persistence, pace [,] perform activities in her schedule, maintain regular attendance and be punctual for such test for 8-hour workdays and 40-hour work weeks. She can tolerate occasional interaction with supervisors, coworkers and members of the public. She can never work in tandem with supervisors and coworkers. She can never work directly with the public as part of her job duties. She can tolerate usual, simple work situations. She can tolerate occasional changes in the routine work setting. She can set realistic goals or make plans independently for only the very simplest of tasks. The very simplest of tasks is defined as one or two-step tasks.

(*Id.* at 32). Based on this residual functional capacity, the ALJ found that Plaintiff could perform past relevant work as a commercial cleaner, hand packager, and housekeeper cleaner. (*Id.* at 37).

## IV.   Plaintiff's Position

Plaintiff argues that the ALJ erred in the following ways: (1) improperly discounting the findings and diagnoses from the treating health care providers; (2) failing to analyze the mechanics of treatment; (3) failing to find that Brown met Listings 12.04, 12.06, 12.08, and 12.15; and (4) failing to incorporate all of

Brown's impairments into the vocational consultant's hypothetical question. (Doc.

13 at 2).

## V.      Commissioner's Position

The Commissioner asserts that the ALJ reasonably found that Plaintiff's

impairments were not *per se* disabling (Doc. 14 at 2), that the ALJ reasonably

considered Plaintiff's treatment records (*Id.* at 5), and Plaintiff's that statements

made by Plaintiff's case manager rendered little probative value. (*Id.* at 7).

## ANALYSIS

## I.      The ALJ erred in failing to find that Brown met the requirements for Listings 12.02, 12.04, 12.05, 12.06, 12.11, and 12.15.

In finding that Brown satisfied step two, the ALJ recognized that Brown had the

following severe impairments: substance induced psychosis from the use of

synthetic cannabinoids, post-traumatic stress disorder, attention deficit hyperactive

disorder, a learning disorder, anxiety, and bipolar disorder. (Doc. 9 at 27). The ALJ

concluded that these severe impairments did not meet the criteria for any of the

impairments that satisfy step three. (*Id.* at 28).

To satisfy step three, a Plaintiff claiming a mental disorder must show that

they meet the medical criteria for a particular condition listed in the federal

regulations and have an extreme limitation to perform at least one of four functions

or a marked limitation to perform at least two of four functions. 20 CFR 404,

Subpart P, Appendix 1, Part A 12.00(A)(2)(b). The ALJ concluded that Plaintiff satisfied the medical criteria, but did not satisfy the extreme or marked limitation requirement. (Doc. 9 at 27-28).

The four functions for the extreme or marked limitation requirement are as follows: 1) Understand, remember, or apply information; 2) Interact with others; 3) Concentrate, persist or maintain pace; and 4) Adapt or manage oneself. 20 CFR 404, Subpart P, Appendix 1, Part A 12.00(E)(1-4). A Plaintiff has a marked limitation if they are seriously limited in their ability to function in that area "independently, appropriately, effectively, and on a sustained basis." 20 CFR 404, Subpart P, Appendix 1, Part A 12.00(F)(2)(d). A Plaintiff has an extreme limitation if they "are not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 CFR 404, Subpart P, Appendix 1, Part A 12.00(F)(2)(e).

A plaintiff can have a marked or extreme limitation as the result of a single listed disorder or a combination of disorders. 20 CFR 404.1520(c). Brown claims to have marked or extreme limitations as the result of a combination of the many different mental disorders from which she suffers. (Doc. 13 at 7). These disorders include 12.02, Neurocognitive disorder; 12.04, Depressive bipolar and related disorders; 12.05, Intellectual disorder; 12.06, Anxiety and obsessive-compulsive

disorders; 12.11, Neurodevelopmental disorder; and 12.15, Trauma and stressor-related disorder. (*Id.*).

## A. The ALJ erred in relying solely on evidence that Brown can, at times, engage in work and living activities to support her finding the Brown only has moderate limitations without considering whether Brown can perform such activities on a sustained basis.

The ALJ found that Brown only had moderate limitations in each of the four categories. (Doc. 9 at 28-29). The ALJ acknowledged evidence in the record of Brown's difficulties with all four categories, but decided that Brown's work activity and daily living activities only warranted a moderate limitation. (*Id.*). The work activity to which the ALJ cited was Brown's periodic stints of employment for a short amount of time. (*Id.* at 28-29, 241). The daily living activities to which the ALJ cited include performing simple maintenance, preparing meals, going to doctor's appointments, taking public transportation, working full time and part time jobs, shopping, driving, spending time with family, dealing appropriately with authority, getting along with others, watching TV, and playing games. (*Id.* at 28-29). The ALJ erred in basing her decision that Brown only has moderate limitations solely on Brown's work and daily living activities due to the fact that ample evidence exists in the administrative record that Brown cannot perform many of the activities mentioned on a sustained basis.

Claimants suffering from mental disorders may experience difficulty engaging and continuing in competitive employment. The ability to work during symptom free periods does not negate a finding of disability in the context of Social Security. *Poulin v. Bowen*, 817 F.2d 865, 875-76 (D.C. Cir. 1987). Brown's employment history demonstrates she can work when her symptoms are lighter, but cannot work when they are more severe.

Brown has struggled to maintain the employment that she has managed to secure. (Doc. 9 at 697). The longest Brown has been able to hold onto a job for is six months, and most of her jobs have only lasted for a much shorter period. (*Id.* at 27, 241-42). Brown quit her job at McDonald's, her longest held job, before she could be fired. (*Id.* at 27).  The ALJ infers from this example that Brown remains capable of holding onto a job. (*Id.*). Brown quit her job at McDonald's because she was having interpersonal issues with her boyfriend. (*Id.*). Interpersonal issues with people, particularly those close with her, are a well-documented symptom of Brown's mental illness. (*Id.* at 675). Brown quitting her job at McDonald's is a product of her various mental health issues for this reason.

Brown also has a history of struggling to perform satisfactorily at her jobs. Brown's home care client complained that Brown was not properly groomed and dressed when she came to work. (*Id.* at 786). Brown has struggled in the past with working her scheduled hours. (*Id.* at 743). A coworker had expressed her

frustration with Brown failing to show up for her scheduled shift. (*Id.* at 740).

Brown has also demonstrated a difficulty arriving to work on time. (*Id.* at 621).

Brown has walked off job sites when she has felt overwhelmed. (*Id.* at 675). Proper

hygiene and punctual arrival are essential functions to hold even the simplest jobs.

Brown has demonstrated an inability to do either, preventing her from holding a

job on a sustained basis.

Brown has had multiple hospitalizations for mental health issues. (*Id.* at 328,

456, 497). These hospitalizations also prevent Brown from working or engaging in

living activities on a sustained basis. Brown has been hospitalized in the past for

failing to take her medication. (*Id.* at 331, 497). Brown struggles to take her

medication on her own. (*Id.* at 331, 497, 548, 561, 646, 759, 798) This struggle

puts her at risk of future hospitalizations that would render her unable to keep a job

or to deal with other important living activities while she is hospitalized.

Treating healthcare provider Elizabeth Dyrdahl LCPC/LAC opines that

Brown is "in need to assistance to meet her basic needs" and remains "unable to

hold any full time, competitive employment." (*Id.* at 675). Dyrdahl's opinion is

consistent with observations made by Brown's case manager, Rebecca Erickson,

that Brown lacks understanding of finances (*Id.* at 694), struggles to get

transportation to work (*Id.* at 704), struggles to fill out basic paperwork (*Id.* at

597), has difficulty functioning because of hallucinations (*Id.* at 597), needs

assistance doing her own laundry (*Id.* at 747), and struggles to maintain basic personal hygiene. (*Id.*). This shows, at a minimum, that Brown's mental illness, at times, prevents her from engaging in sustained work or living activities.

The ALJ based her finding that Brown only had moderate limitations almost entirely on Brown's performance in various work and living activities at certain times in the recent past. (*Id.* at 28-29). The evidentiary record shows that Brown's ability to perform those activities, in fact, was limited to certain times. (*See e.g.* Doc. 9 at 675).  Brown's mental health issues render her unable to perform work or basic life activities on a sustained basis. (*Id.*). Brown may seem fully functional when her symptoms are mild. When her symptoms worsen, however, Brown struggles with many basic life skills. These struggles amplify Brown's difficulty to perform on the job.

If a disability claimant is able to spend a substantial part of her day performing functions that are transferrable to a work setting, then an ALJ may have reason to disregard testimony about the claimant's symptoms. *Contreras v. Saul*, 477 F. Supp. 3d. 1107, 1124 (S.D. Cal. 2020). "[T]he fact that a Plaintiff regularly engages in some activity does not disprove a disability." *Id.* at 1125. Courts should not penalize disability claimants for attempting to live normal lives. *Id.* The daily living activities cited by the ALJ fail to warrant the ALJ's disregard

of evidence of Brown struggling with keeping up with daily living activities on a

sustained basis.

### B. The administrative record points to Brown having a marked limitation in her ability to understand, remember, or apply information.

Examples of the "Understand remember or apply information" function include:

> "Understanding and learning terms, instructions, procedures; following one-
> or two-step oral instructions to carry out a task; describing work activity to
> someone else; asking and answering questions and providing explanations;
> recognizing a mistake and correcting it; identifying and solving problems;
> sequencing multi-step activities; and using reason and judgment to make
> work-related decisions."

20 CFR 404, Subpart P, Appendix 1, Part A 12.00(E)(1). Brown's healthcare

providers have noted that she struggles with focus and concentration (Doc. 9 at

563), has impaired judgement and insight (*Id.* at 531), struggles to find words (*Id.*),

has auditory hallucinations serious enough to make it difficult for her to function

(*Id.* at 646), and has a bad memory. (*Id.* at 531). Brown would have serious

difficulties with any of the tasks listed as examples if these symptoms were to arise

while she was at work. Brown would have regular symptoms if she worked full-

time, given the frequency symptoms regarding Brown's lack of focus and

concentration mentioned in the administrative record. Brown would have serious

difficulties with her ability to perform any of the examples listed at work when she

has symptoms.

**C. The administrative record points to Brown having a marked limitation in her ability to interact with others.**

Examples of the "Interact with others" function include:

"cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation, understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness."

20 CFR 404, Subpart P, Appendix 1, Part A 12.00(E)(2). Brown maintains a poor relationship with her parents (*Id.* at 588, 716, 738), has been taken advantage of economically by a boyfriend (*Id.* at 688) and a neighbor (*Id.* at 725), and struggles to maintain friendships. (*Id.* at 675, 777, 780). Brown's healthcare providers also believe that Brown struggles with boundaries and could easily be victimized. (*Id.* at 597). The ALJ noted, when determining Brown's residual functional capacity, that Brown could not work with the general public and could only have very limited interaction with co-workers. (*Id.* at 32). Brown would have serious difficulties interacting with co-workers or a supervisor in the workplace, given her poor track record of interacting with others in her personal life.

The ALJ also supported her finding that Brown had only a moderate limitation in her ability to interact with others by noting that Brown was described as pleasant and cooperative throughout her treatment. (*Id.* at 29). Substantial evidence directly contradicts the ALJ's assertion that Brown was pleasant and

cooperative during her treatment. Treatment providers described Brown as

disrespectful on multiple occasions and prone to anger. (Doc. 9 at 591, 675, 685,

688, 691).

### D. The administrative record points to Brown having an extreme limitation in her ability to concentrate, persist, or maintain pace.

Examples of the "Concentrate, persist, or maintain pace" function include:

> "Initiating and performing a task you understand and know how to do;
> working at an appropriate and consistent pace; completing tasks in a timely
> manner; ignoring or avoiding distractions while working; changing activities
> or work settings without being disruptive; working close to or with others
> without interrupting or distracting them; sustaining an ordinary routine and
> regular attendance at work; and working a full day without needing more
> than the allotted number or length of rest periods during the day."

20 CFR 404, Subpart P, Appendix 1, Part A 12.00(E)(3). Brown has a history of

failing to report to work, and when she does not report to work, arriving late. (*Id.* at

621, 744, 747). These issues with work attendance point to Brown's mental

disorders, given her inability to stay organized, focused, or concentrated. (*Id.* at

521, 563). Brown's inability to attend work regularly and on-time due to her

mental condition constitutes an extreme limitation. Ample documentation of

Brown's easily distractible nature in the administrative record (*See e.g.* Doc. 9 at

512, 521, 532, 563, 651) additionally precludes there being any substantial basis

for the ALJ's holding that Brown only has a moderate limitation for the

"Concentrate, persist, and maintain pace" category.

### E. The administrative record points to Brown having an extreme limitation in her ability to adapt or manage herself.

Examples of the "Adapt or manage oneself" function include:

"Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions."

20 CFR 404, Subpart P, Appendix 1, Part A 12.00(E)(4). Brown's healthcare providers have frequently noted that she struggles with cleanliness and personal hygiene. (Doc. 9 at 734, 741, 747, 765, 768, 786). Brown's struggles with cleanliness and personal hygiene proved so severe that her healthcare provider felt the need to provide her with laundry assistance. (*Id.* at 747). In addition, Brown struggled with returning phone calls to schedule that laundry assistance. (*Id.* at 741). Having sufficient personal hygiene at work requires having clean clothes. One of the clients at Brown's home care job even mentioned this lack of cleanliness to her. (*Id.* at 786). As personal hygiene is necessary to hold a job, an extreme limitation exists as to brown's inability to do her own laundry.

Additionally, Brown often refuses or forgets to take the medication that could possibly alleviate some of her symptoms (*Id.* at 331, 497, 548, 561, 646, 759, 798), needs help filling out basic forms (*Id.* at 597), struggles to get to work on time (*Id.* at 621, 744, 747), and struggles to keep a job for longer than a trivial

16

period of time. (*Id.* at 27, 241-42, 697). These facts all indicate that Brown is unable to keep her personal life in sufficient order to succeed at a job.

## II.     The ALJ erred in failing to incorporate all of Brown's ailments in the vocational consultant's hypothetical question.

The ALJ concluded that Brown possesses the residual capacity to perform full time work performing simple tasks with no public interaction. (Doc. 9 at 32). This part of the ALJ's holding directly contradicts the evidence considered by the ALJ in this case. A vocational expert testified at Brown's ALJ hearing that an individual who was off task at least 20 percent of the workday could not perform any work. (Doc. 9 at 78-9). Dyrdahl noted that Brown suffers from persistent cognitive impairment (i.e. poor judgment, memory loss, poor insight, poor orientation) 75 percent of the time and odd or impoverished thought process (i.e. worries, ruminations, obsessions, compulsions) 75 percent of the time. (*Id.* at 675). This percentage of time estimate is consistent with other observations that mental healthcare providers have made about Brown, including her serious difficulties paying attention, remembering information, and concentrating on the task at hand. (*Id.* at 531, 563).  Brown would most likely be off task when suffering from persistent cognitive impairment or odd or impoverished thought process. This would make Brown off task, at minimum, 75 percent of the time, which far exceeds the maximum figure provided in the vocational consultant's hypothetical.

The ALJ also cites Brown's past work to conclude that she has the residual functional capacity to perform some sort of work. (*Id.* at 32). What the ALJ overlooks, however, is that Brown's longest employment was eight months, and most of her jobs have lasted for a much shorter period. (*Id.* at 27, 241-42, 697). Further evidence suggests that Brown routinely fails to perform in a satisfactory manner at her jobs. (*Id.* at 621, 675, 740, 743, 786). A person must be able to engage in sustained work activity on a regular and continuing basis in order to have the residual functional capacity to perform a particular occupation. *Brown v. Astrue*, 405 Fed.Appx. 230, 233 (9th Cir. 2010). Brown has been unable to sustain employment for more than a trivial period of time. Brown's lack of success at her jobs indicates that she lacks the residual functional capacity to perform any of those jobs.

No substantial evidence exists in this case to suggest Brown retains the residual functional capacity to perform either any of her previous work or any other work. The vocational consultant's hypothetical, when applied to Brown's health records, makes it clear that Brown could not maintain a job on a sustained basis. Brown's work history only further bolsters this point.

18

## CONCLUSION

No substantial evidence exists to indicate that Brown failed to satisfy step three of the five-step test. The administrative record strongly points toward Brown's inability to work on a sustained basis in the past. Observations and opinions about Brown's behavior made by mental health care providers in the administrative record point toward Brown having multiple marked and extreme limitations. No substantial evidence exists to indicate that Brown would fail to satisfy steps four and five, in the event that step three were not satisfied, because the vocational consultant's hypothetical, when applied to Brown's symptoms listed in the administrative record, points toward Brown being unable to work any job.

## REMEDY

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). When the record is fully developed and further proceedings would serve no useful purpose, however, the Court may remand for an immediate award of benefits. *Id.* Remand for an award of benefits proves appropriate if no outstanding issues must be resolved before a determination of disability can be made and if it is clear from the record that the ALJ would be required to find the claimant disabled if the ALJ

properly had credited evidence that was rejected during the administrative process. *Id.* (citing *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)).

Remand for an immediate award of benefits proves appropriate here. The record is fully developed, and further proceedings would serve no useful purpose. No outstanding issues exist that must be resolved before a determination of disability can be made. The ALJ developed a record that shows plaintiff met the listing criteria for Mental Disorder Listing 12.02, Neurocognitive disorder; 12.04, Depressive bipolar and related disorders; 12.05, Intellectual disorder; 12.06, Anxiety and obsessive-compulsive disorders; 12.11, Neurodevelopmental disorder; and 12.15, Trauma and stressor-related disorder. Meeting the criteria for a listed impairment or combination of listed impairments qualifies Plaintiff for social security benefits. *See* 20 C.F.R. § 416.920(d); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). It is thus clear from the record that the ALJ would have been required to find Plaintiff disabled beginning August 28, 2018, if the ALJ had adequately observed Plaintiff's mental impairments. The Court will reverse the Commissioner's final decision denying Plaintiff disability insurance benefits beginning August 28, 2018, and remand for an immediate award of benefits.

Accordingly, **IT IS HEREBY ORDERED** that:

1. The Commissioner's final decision denying Plaintiff's claims for disability insurance benefits is **REVERSED** and **REMANDED** for an

immediate award of benefits beginning August 28, 2018.

2.  The Clerk of Court is directed to enter judgment accordingly.

DATED this 18th day of April, 2022.


_____

Brian Morris, Chief District Judge
United States District Court